United States District Court
Southern District of Texas
**ENTERED**
November 07, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASHWINI NELSON and | § | |
| AARON NELSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-778 |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Ocwen Loan Servicing, LLC's ("Defendant") Motion to Dismiss Plaintiff Aaron Nelson ("Aaron") and Plaintiff Ashwini Nelson's ("Ashwini") (collectively "Plaintiffs") First Amended Complaint and Alternative Motion for More Definite Statement (Doc. 14).[2]   The court has considered the motion, the response, all other relevant filings, and the applicable law.   For the reasons set forth below, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.   The court **DENIES** Defendant's alternative motion a more definite statement.

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 5, Ord. Dated Apr. 1, 2016.

[2]    Also pending is Defendant's Motion to Dismiss and Alternative Motion for More Definite Statement (Doc. 4) filed on March 31, 2016, shortly after removal.   Defendant filed its motion to dismiss Plaintiffs' first amended complaint on July 14, 2016, after the court granted Plaintiffs leave to amend. The more July 2016 motion to dismiss covers many of the same arguments for dismissal as the March 2016 motion but is tailored to the amended complaint.   The court **RECOMMENDS** that March motion to dismiss be **DENIED AS MOOT**.

## I.  Case Background

Plaintiffs filed this residential mortgage action in state court on April 6, 2015.[3]  Defendant removed it on March 24, 2016.[4]

### A.  **Factual Background**

In 2009, during their marriage, Plaintiffs purchased a house at 4119 Trail Lake Drive, Houston, Texas, 77045.[5]  Aaron contributed funds, and Ashwini acquired a loan through GMAC financing.[6]  Both Plaintiffs were named on the deed for the property.[7] As part of the mortgage payment, Plaintiffs paid into an escrow account for property taxes and insurance.[8]

In 2010, Defendant notified Plaintiffs that it had become the new loan servicer.[9]  Shortly thereafter, "Plaintiffs learned the homeowners insurance . . . was in danger of lapsing due to nonpayment."[10]  Based on the information available to them, Plaintiffs believed that Defendant failed to make the insurance

---

[3]    See Doc. 1, Notice of Removal p. 1; Doc. 1-2, Ex. A-2 to Notice of Removal, Pls.' Orig. Pet. & Req. for TRO & Temporary Inj. & Permanent Inj. & Suit to Quiet Title & for Unlawful Collection Activities ("Pls.' Orig. Pet.").

[4]    See Doc. 1, Notice of Removal p. 1.

[5]    Doc. 13, Pls.' 1st Am. Compl. p. 2.  Plaintiffs divorced sometime prior to the filing of the first amended complaint.  See id. p. 2.

[6]    Id.

[7]    Id.

[8]    Id.

[9]    Id.

[10]    Id.

payment to Farmers Insurance ("Farmers"), and they arranged to pay Farmers directly.[11]

Plaintiffs then contacted Defendant to request that the escrow payment be reduced to account for Plaintiffs' acceptance of responsibility for the insurance payments.[12]  Defendant agreed, and the subsequent few statements reflected the requested decrease in escrow payments.[13]  However, Defendant raised the escrow payment back to the original amount, prompting Plaintiffs to seek an explanation.[14]  Defendant contended that there had never been insurance on the home, but, after Plaintiffs provided an explanation and proof of insurance, Defendant agreed to reduce the payment amount.[15]  After a couple of months, though, Defendant raised the payment amount once again to the original amount and assessed late fees.[16]  Defendant provided no other explanation than that it was permissible under the loan agreement.[17]  Plaintiffs requested an accounting, but Defendant failed to respond.[18]

Defendant sent Plaintiffs a statement dated June 17, 2014,

---

[11]    Id. pp. 2-3.

[12]    Id. p. 3.

[13]    Id.

[14]    Id.

[15]    Id.

[16]    Id.

[17]    Id.

[18]    Id.

that indicated the account was in arrears by an amount of $5,659.63.[19]  On July 1, 2014, Aaron sent Defendant a cashier's check in the amount of "$5,5659.83 [sic]."[20]  On November 14, 2014, Defendant returned $1,204.68 without providing any explanation and, later, approximately $2,600.00 without providing any explanation.[21] Defendant then failed to credit payments Plaintiffs made to their account without providing an explanation when requested.[22]

From the time that Defendant began to administer the loan, Defendant's representatives, made daily telephone calls to Plaintiffs, "up to six times a day and sometimes twice within the same hour, demanding payment."[23]  During the telephone calls, Plaintiffs provided information about the insurance, the amount of the note, and/or other information that Defendant sought.[24] Defendant's representatives who made the telephone calls gave "different stories about the account."[25]  Defendant "misrepresented the status of the account to various credit reporting agencies" and refused to correct the errors upon Plaintiffs' requests.[26]

---

[19]   Id.

[20]   Id.

[21]   Id.

[22]   Id. p. 4.

[23]   Id.

[24]   Id.

[25]   Id.

[26]   Id.

Defendant threatened foreclosure, and Plaintiffs retained counsel who contacted Defendant in December 2014 to dispute the validity of the debt.[27]  But Defendant did not relent in pursuing collection efforts and posted the home for a foreclosure sale in April 2015.[28]

## B.  **Procedural Background**

On April 6, 2015, Plaintiffs filed a petition against Defendant and Homecomings Financial, LLC.[29]  Plaintiffs also named as defendants numerous individuals in care of Power Default Services, Inc., who were appointed as substitute trustees.[30] Plaintiffs' petition stated that the action against the substitute trustees was only for the purpose of preventing the foreclosure sale of the house.[31]  Plaintiffs sought to enjoin the named defendants from conducting the foreclosure sale and engaging in other collection activities.[32]  Additionally, Plaintiffs asked the court to "[r]emove the unlawful cloud and taint to Plaintiffs' property and quiet title in the name of Plaintiff [sic]."[33]

---

[27]    Id.

[28]    Id.

[29]    See Doc. 1-2, Ex. A-2 to Notice of Removal, Pls.' Orig. Pet.

[30]    Id. pp. 2, 3.

[31]    See id. p. 2.

[32]    See Doc. 1-2, Ex. A-2 to Notice of Removal, Pls.' Orig. Pet. pp. 1, 2, 5-7.

[33]    Id. p. 8.

5

On April 15, 2015, Defendant was served through an authorized agent, and Homecomings Financial, LLC, was served through the Texas Secretary of State.[34]   On April 21, 2015, process server unsuccessfully attempted service on Power Default Services, Inc.[35]

On May 11, 2015, Defendant answered the lawsuit, asserting a general denial and raising several defenses.[36]  On October 2, 2015, the state court sustained Defendant's special exceptions to Plaintiffs' original petition and ordered Plaintiffs to amend their petition to cure the enumerated defects.[37]  Rather than filing an amended petition, Plaintiffs filed "Plaintiffs' First Supplemental Original Petition."[38]   The new pleading did not request that the court grant injunctive relief, remove clouds on the title, or quiet title.[39]  Instead, Plaintiffs raised entirely new causes of action: breach of contract, fraud, negligent misrepresentation, and violations of the Texas Debt Collection Act[40] ("TDCA") and the Texas

---

[34]     See Doc. 1-2, Ex. A-8 to Notice of Removal, Aff. of Serv.; Doc. 1-2, Ex. A-9 to Notice of Removal, Aff. of Serv.

[35]     See Doc. 1-2, Ex. A-7 to Notice of Removal, Aff. of Attempted Serv./Non-Serv.

[36]     See Doc. 1-2, Ex. A-6 to Notice of Removal, Def.'s Orig. Ans. to Pls.' Orig. Pet.

[37]     See Doc. 1-2, Ex. A-13 to Notice of Removal, Ord. Granting Special Exceptions to Pls.' Orig. Pet.

[38]     See Doc. 1-2, Ex. A-14 to Notice of Removal, Pls.' 1st Suppl. Orig. Pet.

[39]     See id.

[40]     See Tex. Fin. Code Ann. §§ 392.001-392.404. Plaintiffs refer to this statute as "Texas Fair Debt Collection Act." The statute does not identify a short title for the act, but the more popular name is "Texas Debt Collection

Deceptive Trade Practices-Consumer Protection Act[41] ("TDTPA").[42] Plaintiffs requested actual damages.[43]

On December 10, 2015, Defendant filed a motion to dismiss, which prompted Plaintiffs to refile, without any substantive change, their previously filed "supplemental" pleading under the new title of "Plaintiffs' First Amended Original Petition."[44] The originally pled causes of action for injunctive relieve, to remove clouds, and to quiet title were no longer pled.[45]

On January 6, 2016, Plaintiffs nonsuited Homecomings Financial, LLC.[46] On February 16, 2016, Plaintiffs filed a second amended pleading that was identical to the first amendment except that it excluded Homecomings Financial, LLC, as a defendant and sought damages not to exceed $750,000 for Ashwini and not to exceed

---

Act." See, e.g., Rucker v. Bank of Am., N.A., 806 F.3d 828, 829 (5th Cir. 2015); CMH Homes v. Perez, 340 S.W.3d 444, 447 (Tex. 2011); Sheetz v. Slaughter, ___ S.W.3d ___, 2016 WL 4582178, at *2 (Tex. App.—Dallas Aug. 31, 2016, no pet.).

[41]   See Tex. Bus. & Com. Code Ann. §§ 17.41-17.63. Plaintiffs refer to this statute as Texas Deceptive Trade Practices Act, but the statute identifies its short title as "Deceptive Trade Practices-Consumer Protection Act."  Tex. Bus. & Com. Code Ann. § 17.41.

[42]   See Doc. 1-2, Ex. A-14 to Notice of Removal, Pls.' 1st Suppl. Orig. Pet

[43]   See id. p. 5.

[44]   See Doc. 1-2, Ex. A-16 to Notice of Removal, Def.'s Mot. to Dismiss Pls.' Cls.; Doc. 1-2, Ex. A-18 to Notice of Removal, Pls.' Resp. in Opp. to Def.'s Mot. to Dismiss, Ex. A, Pls.' 1st Am. Orig. Pet.

[45]   See Ex. A-18 to Notice of Removal, Pls.' Resp. in Opp. to Def.'s Mot. to Dismiss, Ex. A, Pls.' 1st Am. Orig. Pet.

[46]   See Doc. 1, Notice of Removal p. 1; Doc. 1-2, Ex. A-20 to Notice of Removal, Notice of Nonsuit Without Prejudice; Doc. 1-2, Ex. A-21 to Notice of Removal, Ord. of Nonsuit.

$500,000 for Aaron.[47]   Three days later, Defendant answered the second amended petition, asserting a general denial and raising various defenses.[48]

On February 24, 2016, Plaintiffs filed a third amended petition.[49]   The only change was Plaintiffs' repetition of their damage request at the conclusion of each of the five cause-of-action sections rather than only in the damages section as previously pled.[50]  On February 25, 2016, Plaintiffs filed a fourth amendment to add two sentences to the damages section: "The parties herein seek monetary relief of over $200,000.00 per party but not more than $1,000,000.00 each.  The parties also demand judgment for all the other relief to which the particular party deems himself entitled."[51]

On March 24, 2016, thirty days after Plaintiffs filed the fourth amended petition, Defendant removed the action to this court.[52]   Defendant asserted therein that it was not until Plaintiffs stated in the fourth amended petition that they were

---

[47]     Doc. 1-3, Ex. A-25 to Notice of Removal, Pls.' 2nd Am. Orig. Pet.

[48]     Doc. 1-3, Ex. A-26 to Notice of Removal, Def.'s 1st Am. Ans. to Pls.' 2nd Am. Pet.

[49]     Doc. 1-3, Ex. A-29 to Notice of Removal, Pls.' 3rd Am. Orig. Pet.

[50]     Compare Doc. 1-3, Ex. A-25 to Notice of Removal, Pls.' 2nd Am. Orig. Pet. pp. 3-5 with Doc. 1-3, Ex. A-29 to Notice of Removal, Pls.' 3rd Am. Orig. Pet. pp. 3-5.

[51]     Doc. 1-3, Ex. A-30 to Notice of Removal, Pls.' 4th Am. Orig. Pet. p. 5.

[52]     See Doc. 1, Notice of Removal p. 2.

seeking monetary relief of more than $200,000 that the case became removable.[53]  Plaintiffs did not challenge removal.  Defendant filed a motion to dismiss on March 31, 2016, immediately after which the case was referred to the undersigned.[54]

Plaintiffs filed a motion to amend or, alternatively, for an extension of time to file a response to Defendant's motion.[55]  The court granted the motion, and, on June 23, 2016, Plaintiffs filed an amended pleading entitled "Plaintiffs' First Amended Complaint."[56]  The new pleading was in the format of federal complaints and listed Plaintiffs and Defendant as the only parties to the suit.[57]  Plaintiffs also provided more factual detail than what was in their state-court pleadings.[58]  Plaintiffs did not revive the causes of action originally pled, opting instead only to pursue the claims of breach of contract, fraud, negligent misrepresentation, and violations of the TDCA and the TDTPA.[59]  On

---

[53]    See id. pp. 7-8.  Plaintiffs represented that Defendant "demand[ed]" that they "plead the maximum amount of damages sought, which Plaintiff[s] did in their Fourth Amended Petition."  Doc. 11, Pls.' Am. Mot. for Leave to File Am. Pet. & Alternative Resp. to Def.'s Mot. to Dismiss & for More Definite Statement pp. 1-2.

[54]    See Doc. 4, Def.'s Mot. to Dismiss & Alternative Mot. for More Definite Statement; Doc. 5, Ord. Dated Apr. 1, 2016.

[55]    See Doc. 11, Pls.' Am. Mot. for Leave to File Am. Pet. & Alternative Resp. to Def.'s Mot. to Dismiss & Mot. for More Definitive Statement.

[56]    See Doc. 12, Ord. Dated June 8, 2016; Doc. 13, Pls.' 1st Am. Compl.

[57]    See Doc. 13, Pls.' 1st Am. Compl.

[58]    See id. pp. 2-4.

[59]    See id. pp. 4-8.

July 14, 2016, Defendant responded to the amendment by filing a second motion to dismiss directed at the allegations in Plaintiffs' First Amended Complaint.[60]

On August 4, 2016, Plaintiffs filed a document that is identical to Plaintiffs' First Amended Complaint except for the addition of one sentence: "Please see an attached summary of events attached to this Complaint as Exhibit '1.'"[61]  Exhibit 1 stated:

> 1) Defendant contends that Plaintiff [sic] failed to submit the amount of money sought in excess and over the monthly payment amount.  This is the exact gravamen of Plaintiffs['] claims in that Plaintiffs have never been advised of said amount other than on one occasion wherein Defendant contended $5,659.63 was owed and due.  Plaintiffs timely paid said amount; however, after payment of said amount the Defendant once again contended that the account was past due.
>
> 2) In short, Defendant's continued failure to articulate an amount past due and/or accept the amount they contend was past due and paid timely has caused issues with respect to the amounts lawfully owed with respect to the property made the basis of this suit.
>
> 3) The servicer of the loan should be able to advise the Plaintiffs of the amounts owed and due along with the back up documentation with respect thereto.  This has caused confusion and created issues with respect to title.[62]

Plaintiffs docketed the filing as a response to Defendant's motion

---

[60]   See Doc. 14, Def.'s Mot. to Dismiss Pls.' 1st Am. Compl. & Alternative Mot. for More Definite Statement.

[61]   Doc. 15, Pls.' 1st Suppl. 1st Am. Compl. p. 2.

[62]   Id. Ex. 1.

to dismiss but entitled the document "Plaintiffs' First Supplemental First Amended Complaint."[63]

The filing, including the exhibit, cannot be considered a response to Defendant's motion because it offers no responsive legal arguments.   The filing cannot be considered an amended pleading because it was filed without leave of the court and without Defendant's written consent.[64]   The exhibit, which Plaintiffs reference as a "summary of events," contains no details of events but only vague allegations that contribute nothing to the court's analysis of Defendant's pending motion to dismiss or to Plaintiffs' live pleading.   For these reasons, the court **STRIKES** the filing (Doc. 15).

The court is left to address Defendant's motion to dismiss without benefit of a response from Plaintiffs.

## II.  Dismissal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.   When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.   Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v.

---

[63]    See Doc. 15, Pls.' 1st Supp. 1st Am. Compl.

[64]    See id.

11

Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

The Local Rules for the Southern District of Texas state that "[f]ailure to respond [to a motion] will be taken as a representation of no opposition." L.R. 7.4. However, because it would be improper to dismiss an action merely due to a lack of a substantive response, this court must carefully consider the merits of the dispositive motion. Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

### III. Analysis

Defendant moves to dismiss all of Plaintiffs' claims. In addition to arguing that Plaintiffs failed to allege sufficient

12

facts to support each element of each cause of action, Defendant raises several legal arguments specific to certain claims.  The court addresses Defendant's arguments in the context of each alleged cause of action.

## A.   **Breach of Contract**

In Texas, "[t]he essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009)(quoting Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Defendant challenges the sufficiency of Plaintiffs' allegations in support of the third and fourth elements, arguing that Defendant did not breach the mortgage contract and that Plaintiffs suffered no damage.

In their live pleading, Plaintiffs alleged Defendant breached by failing to administer the loan in accordance with the terms of the agreement and by "demanding more money than it was entitled to without any explanation or validation."[65]  They also alleged that, after Defendant began servicing the loan, Defendant failed to pay the homeowners' insurance bill in accordance with the mortgage agreement.  Plaintiffs further asserted that, after they paid the

---

[65]   Doc. 13, Pls.' 1st Am. Compl. p. 5.

13

bill and informed Defendant that they would continue to do so, Defendant failed to make proper adjustments to the escrow payments. Additionally, Plaintiffs claimed that Defendant failed to credit their account with payments they made.

Defendant contends that Plaintiffs' allegations are vague and conclusory, suggesting that Plaintiffs needed to identify the amount of excess money demanded, the way in which the demands exceeded the payments authorized by the note and deed of trust, and the dates of Defendant's demands for unauthorized payment amounts. The court finds that the liberal pleading standard does not require all of these details. Demanding payments in excess of that allowed under the mortgage agreement, collecting improper escrow payments and failing to credit payments may constitute breaches and are sufficiently pled.

Regarding damages, Plaintiffs explicitly stated that they suffered damages of $75,000 at a minimum but fail to state specifically to what that amount is attributable. However, Plaintiffs indicated that they found it necessary to pay for homeowners' insurance out of pocket. Although their pleading was vague as to whether they paid the bills that Plaintiffs believed to include unauthorized charges, it did allege that they paid over $5000 to bring the account current when billed only to have Defendant refund portions of the payment and then notify Plaintiffs that the account was in arrears. These out-of-pocket payments were

sufficient to satisfy Plaintiffs' pleading requirements on the damages element.

Plaintiffs' breach of contract claim should not be dismissed.

**B.   Fraud/Negligent Misrepresentation**

Fraud requires proof that: (1) a material representation was made; (2) it was false when made; (3) "the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;" (4) the speaker made it with the intent that the other party should act on it; (5) that the party did act in reliance on the representation; and (6) that the acting party suffered an injury as a result.  Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337 (Tex. 2011)(quoting Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (2009)).   Similarly, in order to prevail on a negligent misrepresentation claim, a plaintiff must prove that:

> (1) a representation was made by a defendant in the course of business; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

Brown & Brown of Tex., Inc. v. Omni Metals, Inc., 317 S.W.3d 361, 384 (Tex. App. – Houston [1st Dist.] 2010, pet. denied)(quoting Omni Metals, Inc. v. Poe & Brown of Tex., Inc., No. 14-00-01081-CV, 2002 WL 1331720, at *4 (Tex. App.—Houston [14th Dist.] June 13, 2002, pet. denied)(unpublished)); see also Fed. Land Bank Ass'n of

15

<u>Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991).

Rule 9(b) requires a plaintiff to plead fraud with particularity.  The Fifth Circuit requires that the complaint specify what statements were fraudulent, who made them, when and where they were made, and why they were fraudulent.  <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 339 (5th Cir. 2008)(quoting <u>Herrmann Holdings Ltd. v. Lucent Techs. Inc.</u>, 302 F.3d 552, 564-65 (5th Cir. 2002)).  District courts in the Fifth Circuit have applied Rule 9(b) to claims of negligent misrepresentation when the "fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim."  <u>Collin Cty. v. Sungard Pub. Sector, Inc.</u>, Case No. 4:14CV364, 2015 WL 5853169, at *4 (E.D. Tex. Sept. 29, 2015)(unpublished)(quoting <u>Am. Realty Tr., Inc. v. Travelers Cas. & Sur. Co. of Am.</u>, 362 F. Supp.2d 744, 752 (N.D. Tex. 2005)).

Defendant argues that both the fraud and the negligent misrepresentation claims are subject to the Rule 9(b) heightened pleading standard and that Plaintiffs failed to meet that standard.  Regarding the negligent misrepresentation claim, Defendant argues that Plaintiffs failed even to meet the basic pleading standard.  Defendant also contends that both claims are barred by the economic loss doctrine.

Plaintiffs alleged that Defendant committed fraud by making

16

"representations such as the amount of the debt owed, the fees and charges due under the loan, the alleged default status to the credit reporting agencies, or posting the home wrongfully for foreclosure."[66]   Plaintiffs alleged that Defendant negligently misrepresented that it "would accurately administer the loan according to the terms of the loan agreements," that the property was never covered by homeowners' insurance, and that late fees and other charges were owed, as well as misrepresenting the total amount Plaintiffs owed.[67]

The two claims clearly overlap with regard to the total amount owed and the fees and other charges assessed.   Thus, Rule 9(b) applies to both the fraud and negligent-misrepresentation claims as to these allegations.   Plaintiffs' fraud claim also covered the allegations that Defendant fraudulently reported to credit agencies that the loan was in default and fraudulently posted the house for foreclosure sale.   These allegations are also subject to the Rule 9(b) requirements.   Other than generically identifying the statements made, Plaintiffs provided no facts to support the allegations.   Plaintiffs did not specify who made the statements, when and where they were made, or why they were fraudulent.   These allegations cannot survive Rule 9(b).

Plaintiffs' pleading problems run deeper, though, because the

---

[66]     Doc. 13, Pls.' 1ˢᵗ Am. Compl. p. 8.

[67]     Id. p. 7.

17

allegations subject to Rule 9(b), as well as the alleged negligent misrepresentations concerning Defendant's administration of the loan and insurance coverage, fail to even satisfy the Rule 12(b)(6) pleading standard.  Plaintiffs made the bald assertion as to both the fraud and negligent-misrepresentation causes of action that Plaintiffs relied on the alleged representations to their harm. They did not indicate what actions they took in reliance on each particular statement or how they were harmed.   Their allegations are insufficient, not only in failing to demonstrate actual reliance, but also in failing to demonstrate justifiable reliance. See Grant Thorton LLP v. Prospect High Income Fund, 314 S.W.3d 913, 923 (Tex. 2010)("Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance.").   In other words, Plaintiffs provided nothing more than "a formulaic recitation" of the reliance and damage elements of the fraud and negligent-misrepresentation claims.  See Twombly, 550 U.S. at 555.

Plaintiffs' claims of fraud and negligent misrepresentation should be dismissed.[68]  As Plaintiffs made at least eight attempts at pleading viable claims, the court finds that no additional grace in repleading is warranted.

**C.  TDCA**

The TDCA protects consumers from wrongful debt collection

---

[68]    The court does not address Defendant's economic-loss argument in favor of dismissing the fraud and negligent-misrepresentation claims because those claims were not properly pled and are not before the court.

practices, allowing an aggrieved person to sue for injunctive relief and actual damages. See Tex. Fin. Code § 392.403(a); Ford v. City St. Bank of Palacios, 44 S.W.3d 121, 135 (Tex. App.–Corpus Christi 2001, no pet.). The act prohibits a "debt collector" in "debt collection" from engaging in various types of harassment or abuse and unfair or unconscionable means of collection, including: "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number;" and "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code §§ 392.302(4); 392.303(a)(2). The TDCA also prohibits "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8).

The statute defines "debt collector" as "a person who directly or indirectly engages in debt collection." Tex. Fin. Code § 392.001(6). The Fifth Circuit considers this definition to include mortgage servicers. See Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 723 (5th Cir. 2013); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). "Debt collection" is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a

creditor." Tex. Fin. Code Ann. § 392.001(5). Consumer debts cover those obligations that are "primarily for personal, family, or household purposes." Tex. Fin. Code Ann. § 392.001(2).

Defendant argues that Plaintiffs failed to plead sufficient facts to support their TDCA cause of action. They also argue that Plaintiffs suffered no damages and that the TDCA claim is barred by the economic loss doctrine.

Plaintiffs alleged that Defendant telephoned Plaintiffs numerous times per day, "sometimes more than once an hour."[69] Plaintiffs also complained that Defendant unnecessarily sent an inspector to the house "multiple times to evaluate the property" and charged them for the inspector's fee.[70] Plaintiffs' third TDCA allegation was that Defendant "misrepresent[ed] the character and extent of the debt" they owed "by moving to foreclose on the property . . . when the amount of the debt was disputed and the amount allegedly in arrears was incorrect."[71]

The first allegation fits within the TDCA description of harassment through telephone calls. The second allegation is not that the inspection and fee were not authorized by the loan agreement but, implicitly, that the number and frequency of the inspections were not necessary and, thereby, unauthorized. These

---

[69] Doc. 13, Pls.' 1st Am. Compl. p. 5.

[70] Id. p. 6.

[71] Id.

20

allegations are sufficient to state grievances pursuant to Texas Financial Code §§ 392.302(4) and 392.303(a)(2), respectively.  The court also finds that the damages, both emotional and monetary, from the alleged harassment and unconscionable conduct required no additional factual detail at this stage of litigation.

However, the third allegation, concerning the misrepresentation of the mortgage debt by attempting to foreclose, implicates the economic loss doctrine.  Simply put, "[t]he economic loss doctrine prevents a plaintiff from recovering in tort for a breach of a contractual duty." Birchler v. JPMorgan Chase Bank, CIVIL ACTION NO 4:14-CV-81, 2015 WL 1939438, at *4 (E.D. Tex. Apr. 29, 2015)(citing Hurd v. BAC Home Loans Servicing, LP, 880 F. Supp.2d 747, 763 (N.D. Tex. 2012)).  "[D]istrict courts within the Fifth Circuit have applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." Llanes v. U.S. Bank, Nat'l Ass'n, No. 3:13-CV-2243-M-BN, 2014 WL 2883922, at *9 (N.D. Tex. June 25, 2014)(unpublished)(listing cases); but see Forbes v. Wells Fargo Bank, N.A., No. 2:14-CV-317, 2015 WL 419623, at *6 (S.D. Tex. Jan. 29, 2015)(finding that the statutory duties imposed on a mortgage servicer, as a debt collector under the TDCA, not to engage in certain types of misrepresentations are not based solely on the mortgage servicer's contractual duties).

Here, Plaintiffs' complaints about the alleged misrepresentations of the amount owed on their loan and Defendant's attempt to foreclose while the amount was in dispute are dependent entirely on Defendant's obligations under the mortgaged agreement. Therefore, they are barred by the economic loss rule. Plaintiffs' TDCA claim pursuant to the Texas Financial Code § 392.304(a)(8) should be dismissed. The other two TDCA claims should not be dismissed.

**D. TDTPA**

In order to succeed on a claim under the TDTPA, a plaintiff must show that: 1) it is a consumer; 2) the defendant violated a specific provision of the statute; and 3) the violation was the producing cause of the plaintiff's actual damages. Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co., 313 F.3d 899, 907 (5th Cir. 2002). Under the TDTPA, a "consumer" is "an individual, partnership, corporation . . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). According to case law, a plaintiff qualifies as a consumer and may pursue a private cause of action under the TDTPA if: 1) the plaintiff "[sought] or acquir[ed] goods or services by purchase or lease;" and 2) "the goods or services purchased or leased . . . form the basis of the complaint." Miller, 726 F.3d at 725; Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981).

The burden is on the plaintiff to prove that it is a consumer within the meaning of the TDTPA.  GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc., 955 S.W.2d 286, 292-93 (Tex. App.–Houston [1st Dist.] 1997, writ denied).  Although the TDCA ties into the TDTPA such that a violation of the former is also a violation of the latter, the plaintiff is not relieved of the burden of establishing consumer status.  See Tex. Bus. & Com. Code § 17.50(h); Tex. Fin. Code Ann. § 392.404(a); Marketic v. U.S. Bank Nat'l Ass'n, 436 F. Supp.2d 842, 854-55 (N.D. Tex. 2006)(stating the Texas Business and Commerce Code § 17.50(h) "does not exempt claimants from showing that they qualify as a 'consumer'").

Defendant argues that, in relation to the allegations in their complaint, Plaintiffs were not consumers pursuant to the TDTPA.  Plaintiffs' pleading stated that they were consumers because they "sought to acquire a financial good, a loan, and the services related to managing that loan."[72]

A loan transaction generally is not covered by the TDTPA because "money is considered to be neither a good nor a service." Miller, 726 F.3d at 725.  Under certain circumstances, a loan may serve as the basis for a TDTPA claim, but, even then, only if the goods purchased with the loan forms the basis of the complaint. See id.; Ford, 44 S.W.3d at 134-35.  The servicing of a mortgage loan is not considered a service within the meaning of the TDTPA.

---

[72]     Doc. 13, Pls.' 1st Am. Compl. p. 7.

Khan v. Wells Fargo Bank, N.A., Civil Action No. 4:12-1116, 2013 WL 5323098, at *4 (S.D. Tex. Sept. 20, 2013)(unpublished).   "A mortgage loan is not within the [TDTPA when the loan, rather than the property sought to be purchased, is the basis of the plaintiff's complaint." Id. (citing Miller, 726 F.3d at 725).

Plaintiffs in this case did not complain about the house that they purchased with the loan; rather, they complained about Defendant's servicing of the loan.   Therefore, they do not qualify as consumers under the TDTPA.   The TDTPA claim should be dismissed.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiffs' claims of fraud, negligent misrepresentation, violation of the TDCA under Texas Financial Code § 392.304(a)(8), and violation of the TDTPA and **DENIED** as to Plaintiffs' claims of breach of contract and violation of the TDCA under Texas Financial Code §§ 392.302(4) and 392.303(a)(2).   The court **DENIES** Defendant's alternative motion a more definite statement.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and

legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 7th day of November, 2016.

_____
U.S. MAGISTRATE JUDGE